UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 09-55 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| JAMES E. RICE, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

The sole question here is whether an objectively reasonable officer would have relied on the search warrant in this case. The answer to that question is no. Thus, the defendant's motion to suppress must be granted. R. 52.

### BACKGROUND

Both the defendant, James E. Rice, and the government agree that the warrant issued in this instance was lacking in probable cause. *See* R. 52 (motion to suppress) and R. 54 (government's response). The facts supporting their determination are as follows:

On December 16, 2008, Officer Bryan Bowling, a four-year veteran of the Kentucky Department of Fish & Wildlife, submitted an affidavit to get a search warrant for: 1120 Turkey Fork Road, Scalf, Kentucky. *See* R. 38, Ex. A. In his affidavit, Officer Bowling stated the following:

> On December 16th, 2008, at approximately 3:30 p.m., Affiant received information from/observed:
>
> Deputy Bill Hamilton, of the Knox County Sheriff's department, that Jim Rice had

> sold or pawned several sets of elk antlers to the T & L pawn shop.
>
> Acting on the information received, Affiant conducted the following independent investigation:
>
> This officer went to the T & L Pawn Shop on Knox Street in Barbourville, KY and found three sets of elk antlers that appeared to be freshly removed from elk. Two sets appeared to have been sawed off and one set appeared to be partially sawed and then twisted off. There was not any confirmation numbers visible on the antlers. This officer has also checked through KDSS and Jim Rice has not purchased or been drawn for any quota elk hunt.

R. 38, Ex. A at 2. Officer Bowling got a search warrant to seize "any and all evidence of illegally harvested wildlife including but not limited to, elk or parts thereof and any other criminal activity." R. 38, Ex. B at 1. The search warrant and the affidavit listed the location to be searched as: 1120 Turkey Fork Road, Scalf, Kentucky. *See* R. 38, Exs. A and B. Importantly, it is undisputed that neither the warrant nor the affidavit stated that the premises to be searched were the defendant's residence (or any other reason why the officer believed that evidence of the crime would be found at this location).

On December 17, 2008, Officer Bowling executed the search warrant at the defendant's residence. R. 38, Ex. B at 2. He seized, among other things, three firearms. *Id.*

On August 27, 2009, a grand jury indicted Rice for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). R. 1. On February 24, 2010, Rice filed the instant motion to suppress for lack of probable cause. *See* R. 52. On March 5, 2010, Rice stated that no evidentiary hearing was necessary since his motion is "purely a four corners matter." R. 55 at 1. The government did not request a hearing for this motion in its response. R. 54 at 3 (the government agreeing that a "review of the sufficiency of the evidence supporting probable cause

is limited to the four-corners of the affidavit." (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005))). During a telephonic conference with the parties on March 16, 2010, the government re-stated that the Court should only consider the evidence contained within the four corners of the affidavit when it rules on this motion. R. 67 at 5 ("I think [the good faith analysis] is confined to the four corners in this particular instance"). Following the call, Rice filed a reply in support of his motion. *See* R. 64.

## DISCUSSION

"The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). In this case, the parties agree that the warrant lacked probable cause since the affidavit did not tie the place to be searched to the defendant's alleged illegal activity. *See* R. 54 at 3 (government agreeing that nothing in the affidavit ties Rice to the place searched).

Even without probable cause, the evidence from a search can still be saved from suppression. "[T]he exclusionary rule should not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *United States v. Leon*, 468 U.S. 897, 918-921 (1984)). Under *Leon*, the sole issue is whether the officer reasonably believed that the warrant was properly issued. *Id.* at 752 (quoting *United States v. Carpenter*, 360 F.3d 591, 598 (6th Cir. 2004) (en banc) (Gilman, J., concurring)). Such

reliance is not reasonable when the affidavit itself is severely "lacking in indicia of probable cause." *Id.* at 748.

In order for the search to be saved under *Leon*, there must be "some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Id.* at 749. Here, it is undisputed that there is no such evidence in the affidavit. The affidavit states that the defendant "sold or pawned several sets of elk antlers to the T & L pawn shop." R. 38, Ex. A at 2. Next, it states that the officer confirmed that: (1) the "freshly removed" elk antlers were at the pawn shop, and (2) the defendant had not received permission to "elk hunt." *Id.* The affidavit fails in two critical ways: (1) it fails to indicate that the place to be searched is Rice's residence, and (2) it fails to demonstrate why evidence of the crime would be found at this location.

To uphold this search, the Court would have to find that it was reasonable for an officer to infer: (1) that the address was the defendant's and (2) that evidence of crime would likely be found there. The Court is unaware of any court that has found that making both these inferences at the same time is reasonable—without any supporting evidence in the affidavit or information otherwise known to the issuing judge. In fact, the Sixth Circuit in an en banc decision, *Carpenter*, approvingly addressed a Ninth Circuit case, *United States v. Hove*, that held the opposite. 360 F.3d at 596 (citing 848 F.3d 137 (9th Cir. 1988)). *Carpenter* cited *Hove* to provide an example of an affidavit that fails to state any nexus between the illegal activity and the place to be searched. *Id.* Much like Officer Bowling's affidavit, the affidavit in *Hove* "[did] not link [the place to be searched] to the defendant and it [did] not offer an explanation of why the police

4

believed they may find incriminating evidence there." 848 F.3d at 140. Because there were no facts to show why evidence of contraband would be found at the address listed on the affidavit, the court concluded that it would be unreasonable for an officer to believe there was probable cause. *Id.* Likewise, the affidavit here gives no explanation of why the address to be searched is of consequence. Hence, a reasonable officer could not conclude there was probable cause.

This case is unlike the cases where an officer knew from the warrant that it was the person's residence and simply inferred that evidence of a crime would be found there.[1] *See United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008) (stating that a judge—in making a probable cause determination—"may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence."); *see also Carpenter*, 360 F.3d at 596 (collecting cases where "the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched"). Here, there was no evidence of why the residence to be searched was relevant. The officer would have to first infer that the address was the defendant's and then infer that a person involved in illegal elk hunting would keep evidence in his home. If an officer can pile inference upon inference to achieve reasonable reliance, he can simply infer away the protections of the Fourth Amendment. The officer's reliance on the affidavit here was unreasonable.

---

[1] Hoping to save the search, the government maintains that a reasonable officer may infer that evidence of a crime can be found at a person's residence. R. 54 at 3, n.2 (arguing it is reasonable to assume that one keeps "trophies, game meat, and other similar hunting paraphernalia—such as specialized clothing, calls, and firearms—at one's residence."). The Court does not need to decide the reasonableness of this inference since the affidavit does not state that the address was the defendant's nor is there evidence that the issuing judge knew the residence was the defendant's.

5

The government's response is that "the absence of any statement listing the premises to be searched as the Defendant's residence was merely an oversight or scrivener's error on the part of the affiant, and therefore do [sic] not preclude application of the good-faith exception." R. 54 at 5. Indeed, in some cases, a scrivener's error may not warrant suppression. For example, in *Frazier*, the Sixth Circuit did not apply the exclusionary rule because punishing that agent for a "ministerial oversight would have no foreseeable effect on future police misconduct." 423 F.3d at 535. But Officer Bowling's omission is unlike the scrivener's error in *Frazier*. There, six affidavits failed to mention that the police tape recorded two of the controlled buys that a confidential informant performed. *Id.* at 530. The magistrate judge issuing the warrants asked the agent to revise the affidavits to state that the two buys were tape recorded. *Id.* The agent made the revision to five of the affidavits but "inexplicably" and "unintentionally" did not revise the sixth affidavit, which supported the warrant to search the defendant's residence. *Id.* The magistrate judge issued a warrant "[a]pparently unaware" that the sixth affidavit was not revised. *Id.* at 530. That warrant was used to search the defendant's home and ultimately the government found marijuana and firearms. *Id.* Still, the evidence survived suppression because the magistrate judge knew of the omitted information. The officer simply failed to put it in the affidavit (even after he was asked to do it). That type of scrivener's error, where the issuing judge knows of the missing information, can be overlooked. But here, there is no evidence that the issuing judge knew the place to be searched was the defendant's residence (or any another reason why the officer suspected there would be evidence at the premises searched). The government conceded as much, during a telephonic conference with the Court, when it stated that the officer

could not recall what he told the issuing judge. R. 67 at 5 ("I think if there's information that the issuing judicial officer had additional information that wasn't contained in the warrant, that that may be considered by the Court, but I don't think we have that situation here. I've talked to the officer and, frankly, he can't remember what he discussed with the other judge."). The government also acknowledged that this motion should be decided based on the officer's affidavit alone. *Id.* at 5 ("I think [the good faith analysis] is confined to the four corners in this particular instance"). Those admissions further support the conclusion that *Frazier* does not help the government's position. Ultimately, Officer Bowling's omission is not an error that can be overlooked. *See United States v. Hython*, 443 F.3d 480, 488 (6th Cir. 2006) (noting that the court in *Frazier* only looked outside the affidavit because the issuing magistrate judge actually considered omitted information in the probable cause determination).

The government also seems to dismiss the error in the affidavit as a mere technicality because no one disputes the fact that Officer Bowling knew the place to be searched was Rice's residence. Regardless, the officer had to state that he sought to search Rice's residence in the affidavit or bring evidence to show that the issuing judge knew something relevant that was not in the affidavit. Courts are not permitted to determine how much an affiant knew or when and how they learned it. *Laughton*, 409 F.3d at 752. The officer's state of mind is not a consideration since the *Leon* exception is an objective test.[2]

---

[2] "[A] determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." *Laughton*, 409 F.3d at 751. *Laughton* instructs that "'the relevant question is whether the officer reasonably believed that the warrant was properly issued, *not* whether probable cause existed in fact.'" *Id.* at 752 (quoting *Carpenter*, 360 F.3d at 598 (Gilman, J., concurring)). "This bright-line rule is in harmony

7

It is important to note that the Court is not finding that the officer acted in bad faith. Rather, the Officer Bowling's reliance on the warrant appears to be in "good faith"—but just not reasonable. So that begs the question, why suppress? *See, e.g., United States v. Carr*, No. 08-5700, 2009 WL 4795861, at *7-8 (6th Cir. 2009) (Thapar, D.J., dissenting) (noting the purpose of suppression is to deter wrongful police conduct). First off, *Laughton* (and similar holdings) compels suppression in this instance. *See, e.g., United States v. Bethal*, 245 F. App'x 460, 470 (6th Cir. 2007) (citing *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006)). In *Laughton*, the officer stated in his affidavit that he had observed a confidential informant make numerous drug purchases of methamphetamine in the 48 hours before the officer presented the affidavit. 409 F.3d at 746. Next, the affiant stated that he learned that the defendant kept drugs in his pants and "around the home." *Id.* at 747. He went onto state that the confidential informant: had provided "reliable [and corroborated] information in the past," was credible, and had provided "information that there is more controlled substances at or in the residence." *Id.* The Sixth Circuit found that an objectively reasonable officer would not have relied on that affidavit—which was much more complete than the affidavit in this case. *Id.* at 751. That affidavit had at least some evidence of a nexus and also included that it was the defendant's residence. Neither of which is present here.

Second, the Fourth Amendment's protections are at their highest when the government

---

with the objective nature of the good-faith test and prevents reviewing courts from delving into an analysis of the subjective knowledge of affiants." *Hython*, 443 F.3d at 487 (citing *Laughton*, 409 F.3d at 752).

8

comes knocking at a person's home.  The home is a person's castle.³  If the suppression rule applies at all, it surely applies when one's home is invaded without probable cause.  And, in order to invade the home, the government must have some evidence upon which to reasonably rely.  Officer Bowling's affidavit did not even state that he wanted to search Rice's home.  In the end, the affidavit simply lacked any basis upon which an officer could reasonably rely on to justify searching Rice's home.  So, the evidence from that search must be suppressed.

---

³*See, e.g., United States v. U.S. Dist. Court for the E. Dist. Mich.*, 407 U.S. 297, 313 (1972) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."); *see also Minnesota v. Carter,* 525 U.S. 83, 94 (1998) (Scalia, J., concurring) ("The people's protection against unreasonable search and seizure in their 'houses' was drawn from the English common-law maxim, 'A man's home is *his* castle.'"); *Silverman v. United States*, 365 U.S. 505, 511 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.") (citation omitted); *United States v. Lemus*, 596 F.3d 512, 513 (9th Cir. 2010) (Kozinski, J., dissenting from the denial of rehearing en banc) ("Did I mention that this was an entry into somebody's home, the place where the protections of the Fourth Amendment are supposedly at their zenith?  The place where the government bears a heavy burden of demonstrating that exceptional circumstances justify departure from the warrant requirement.") (internal quotation marks and citation omitted).

CONCLUSION

The motion to suppress will be granted because the affidavit failed to tie the defendant's alleged illegal activity to the premises searched—his home. As such, there is no need to consider the other allegedly deficient aspects of the affidavit that the defendant raises. For these reasons, it is **ORDERED** that the defendant's third motion to suppress, R. 52, is **GRANTED**.

This the 7th day of April, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge